Robert Ottinger (RO-8879)
The Ottinger Firm, P.C.
South Street Seaport
19 Fulton Street, Suite 400
New York, New York 10038
(212) 571-2000

**07 CIV 9508**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL SCOTTO,

    Plaintiff,

vs.

BANC OF AMERICA SPECIALIST, INC.

    Defendants.

Docket No.:

**COMPLAINT
AND JURY TRIAL DEMAND**

Plaintiff Michael Scotto ("Plaintiff"), by his attorneys, The Ottinger Firm, P.C. for his Complaint against Defendant Banc of America Specialist, Inc. ("Defendant"), alleges as follows:

**THE PARTIES**

1. Plaintiff resides in Staten Island, New York. He was employed by Banc of America Specialist, Inc. or its direct predecessors from 1970 until May 2007.

2. Defendant Banc of America Specialist, Inc. is a financial services corporation, located at 14 Wall Street, 21st Floor, New York, NY 10005-1901. Upon information and belief, Defendant is a corporation organized and existing under the laws of New York State.



## THE NATURE OF THE ACTION

3. This is a civil action for damages and remedies of violations of the Family Medical Leave Act ("FMLA") 29 U.S.C.A. § 2601 *et seq.* the Americans with Disabilities Act ("ADA"), the Age Discrimination in Employment Act ("ADEA") and the New York City Administrative Code ("New York City Human Rights Law") §8-107(7).

4. Specifically, Defendant tried to dissuade Mr. Scotto from taking requested FMLA leave to care for his sick father and retaliated against Mr. Scotto by demoting him, reducing his salary and constructively terminating him.

5. Defendant also discriminated against and retaliated against Mr. Scotto because of his association with, and need to care for, his disabled father.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action under 28 U.S.C. § 1331 and § 1367.

7. Venue is proper in this district under 28 U.S.C. § 1391(b) because the events giving rise to this action occurred within this District and Defendant resides in this district.

8. Plaintiff served copies of this Complaint upon the New York City Commission on Human Rights and the Corporation Counsel prior to filing it in this Court.

## FACTS

9. Mr. Scotto is the primary caregiver for his father, who suffers from an illness that renders him unable to walk without assistance. He is entirely dependent on Mr. Scotto for his care.

10. In early August 2005, Mr. Scotto asked his boss, John J. Conklin, for permission to leave one hour early each day in order to care for his father. Mr. Conklin denied Mr. Scotto permission to leave early.

11. In late August 2005, Mr. Scotto again requested intermittent leave to care for his father. However, in this request he specifically asked for the leave under the FMLA. Mr. Conklin again denied his request for leave.

12. Mr. Scotto then told Mr. Conklin that the two of them should speak with the Human Resources Department ('HR Department') because he was entitled to take intermittent leave under the FMLA.

13. On August 24, 2005, Mr. Scotto attended a meeting with Mr. Conklin and a representative from Banc of America Specialist, Inc.'s HR Department, Kristine Yadlow, to discuss whether Mr. Scotto was entitled to leave under the FMLA.

14. Ms. Yadlow informed Mr. Scotto that he was entitled to take FMLA leave.

15. Ms. Yadlow and Mr. Conklin suggested reducing Mr. Scotto's salary to account for the one hour per day that Mr. Scotto would be using to care for his father.

16. On August 25, 2005, Mr. Conklin sent an email to Mr. Scotto setting out terms of his leave and informing him that his salary of one hundred fifty thousand dollars ($150,000) per year would be reduced by twenty five thousand dollars ($25,000) to account for the hour he would miss. Mr. Scotto's title was also reduced from Vice President to Assistant Vice President.

17. On September 6, 2005, Mr. Scotto received a letter from the FMLA claim coordinator approving Mr. Scotto's leave under the FMLA.

18. On September 16, 2005, Banc of America Specialist, Inc. reduced Mr. Scotto's salary by twenty five thousand dollars ($25,000).

19. On September 26, 2005, Mr. Scotto was demoted again and his title was changed from Assistant Vice President to Business Support Manager. This demotion was not performance based.

20. Mr. Conklin started denigrating Mr. Scotto and treating him as his servant. For example, Mr. Conklin made Mr. Scotto get his lunch and make sure that his fruit salad was just the way he liked it "without pineapple" and he would sometimes have to remove the pineapple for Mr. Conklin.

21. Mr. Conklin completely altered Mr. Scotto's position and the way he treated him. Mr. Scotto was ignored, treated as if he was irrelevant, cut out of communication, and ostracized. Mr. Conklin also refused to respond to many of Mr. Scotto's questions and emails and this made it difficult for Mr. Scotto to do his job.

22. Mr. Conklin made Mr. Scotto's life at work miserable and difficult.

23. Mr. Scotto began feeling depressed because of the way he was being treated by Mr. Conklin.

24. Mr. Conklin also made it difficult for Mr. Scotto to complete his daily tasks and Mr. Scotto was unable use the 5 hours per week FMLA time to care for his father.

25. In February 2006, Mr. Scotto was advised by his primary care physician to seek immediate help for what she felt was a serious mental health condition with physical manifestations.

26. Also in February 2006, Mr. Scotto began seeing a psychologist due to the stress at work. Mr. Scotto was also referred to a psychiatrist, who prescribed various medications to treat Mr. Scotto's diagnosed condition of major depression caused by stress at work.

27. On or about February 7, 2006, Mr. Conklin told Mr. Scotto and that he would not be getting a bonus that year. Mr. Scotto had received a bonus every year for the past 36 years.

28. Mr. Conklin also told Mr. Scotto that he was "at a different age than the business".

29. On February 8, 2006, Mr. Scotto sent an email to Christopher Quick (then CEO of Banc of America Specialist Inc.) informing him of Mr. Conklin's actions. Mr. Scotto told Mr. Quick he was going to make a complaint to HR.

30. On February 10, 2006, Mr. Scotto called the Equal Employment Opportunity Commission ('EEOC') and they faxed him forms for filing a complaint. Mr. Scotto filled them out and sent them to the EEOC for review.

31. On February 13, 2006, Mr. Scotto contacted the HR Department and complained. He was told that Banc of America Specialist, Inc. would investigate his complaints.

32. On March 22, 2006, Darren Wilson, the individual assigned by Banc of America Specialist, Inc. to investigate Mr. Scotto's case, called Mr. Scotto. Mr. Wilson said that his investigation found no harassment or retaliation and that bonuses were discretionary. Mr. Scotto asked Mr. Wilson whom he talked to during the investigation. Mr. Wilson said he only spoke to Mr. Conklin.

33. In early May, 2006, Mr. Scotto told Mr. Quick that he had been diagnosed as having severe depression with physical side effects. Mr. Quick suggested that Mr. Scotto to take some leave.

34. In May 2006, Mr. Scotto went on Short Term Disability leave.

35. In June 2006, Mr. Scotto filed a discrimination charge against Banc of America Specialist, Inc. with the EEOC.

36. In May 2007, Mr. Scotto was terminated for being on leave.

37. On August 7, 2007, Mr. Scotto received a Notice of Right to Sue letter from the EEOC giving him 90 days from the receipt of the letter to file a lawsuit.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (VIOLATIONS OF FAMILY MEDICAL LEAVE ACT)

38. Plaintiff hereby repeats and re-alleges each of the above-mentioned allegations as if fully set forth herein.

39. Plaintiff is an eligible employee under the FMLA.

40. Upon information and belief, Defendant is an employer as defined under the FMLA.

41. Under the FMLA, Plaintiff was entitled to take time to care for his sick father.

42. Mr. Scotto gave notice to Defendant of his intention to take FMLA leave. When Mr. Scotto began to take time off under the FMLA, Defendant tried to deny him this leave, then retaliated against him by demoting him in title, reducing his salary, changing the terms and conditions of his employment, creating a hostile

6

work environment, and denying him his bonus. Defendant also constructively terminated him by creating an increasingly hostile work environment when Mr. Scotto tried to exercise his right to take FMLA.

43. By the above course of conduct, Banc of America Specialist, Inc. has violated the Family Medical Leave Act, 29 U.S.C. 2601 *et seq.*

44. Banc of America Specialist, Inc. has violated the FMLA willfully.

45. As a result of the aforementioned violations, Mr. Scotto is entitled to compensatory damages, liquidated damages as well as punitive damages and his reasonable attorney's fees.

### SECOND CAUSE OF ACTION
### (VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT- CAREGIVER DISCRIMINATION)

46. Plaintiff hereby repeats and re-alleges each of the above-mentioned allegations as if fully set forth herein.

47. Plaintiff is an eligible employee under the ADA.

48. Plaintiff is the primary caregiver for his disabled father.

49. After Plaintiff began taking his entitled leave to take care of his sick father, his boss, John Conklin, created a hostile work environment for him.

50. Plaintiff needed to care for his sick father. When he tried to do that, Defendant discriminated against him by creating a hostile work environment and retaliated against him by demoting him in title and reducing his salary. Defendant also constructively terminated him.

51. Plaintiff was discriminated against because of his association with his sick father and because of his role as caregiver.

52. As a result of the aforementioned violations, Mr. Scotto is entitled to compensatory damages, liquidated damages as well as punitive damages and his reasonable attorney's fees.

### THIRD CAUSE OF ACTION
### (VIOLATION OF THE AMERICANS WITH DISABILITIES ACT)

53. Plaintiff hereby repeats and re-alleges each of the above-mentioned allegations as if fully set forth herein.

54. Plaintiff, as a caregiver for his sick father, is an eligible employee under the ADA.

55. Upon information and belief, Defendant is a qualified employer covered under the ADA by virtue of his role as a caregiver to his ailing father.

56. After Mr. Scotto began taking his entitled leave to take care of his sick father, his boss, John Conklin, created a hostile work environment for him.

57. Mr. Scotto's duties were relegated to ordering Mr. Conklin's lunch.

58. On January 24, 2006, Mr. Scotto met his standard review rating for 2005 and on February 7, 2006, Mr. Conklin denied Mr. Scotto his yearly bonus. The prior year, Mr. Scotto's bonus was $100,000. Mr. Conklin stated he could not take money away from other employees to give to Mr. Scotto. Mr. Scotto complained to Human Resources about not getting his bonus in which they investigated and stated that bonuses were discretionary.

59. Mr. Scotto suffered adverse employment action because of his disability.

60. On May 10, 2006, Mr. Scotto went out on short-term disability.

61. On November 10, 2006, Mr. Scotto went out on long-term disability leave.

62. In April 2007, Social Security granted Mr. Scotto permanent disability and awarded him retro pay.

63. On May 31, 2007, Bank of America terminated Mr. Scotto for being on long-term disability leave.

64. By the above course of conduct, Banc of America Specialist, Inc. has violated the Americans with Disabilities Act by terminating his employment due to being on long-term disability leave.

65. Banc of America Specialist, Inc. has violated the ADA willfully.

66. As a result of the aforementioned violations, Mr. Scotto is entitled to compensatory damages, liquidated damages as well as punitive damages and his reasonable attorney's fees.

## FOURTH CAUSE OF ACTION
## (VIOLATIONS OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT)

67. Plaintiff hereby repeats and re-alleges each of the above-mentioned allegations as if fully set forth herein.

68. The Age Discrimination in Employment Act "ADEA" forbids employment discrimination against people over forty years old on the basis of their age.

69. Mr. Scotto is 60 years old.

70. On February 7, 2006, Mr. Conklin told Mr. Scotto that "the business is at a different age than you are, there are big changes coming, more automation." Mr. Scotto was one of the oldest managers at Banc of America with 30 years of seniority. Mr. Scotto felt that Mr. Conklin's comments were directly related to the fact that he was older and no longer fit in the company anymore and wanted him to leave.

71. Mr. Scotto continued to achieve satisfactory evaluations through his years at Banc

of America and was denied his bonus for no reason. Mr. Conklin's demeaning comments about his age were made to make Mr. Scotto feel unworthy of receiving a bonus and in turn affected his mental state.

72. Banc of America Specialist, Inc. has violated the ADEA willfully.

73. As a result of the aforementioned violations, Mr. Scotto is entitled to compensatory damages, liquidated damages as well as punitive damages and his reasonable attorney's fees.

## FIFTH CAUSE OF ACTION
## (VIOLATIONS OF THE NEW YORK CITY HUMAN RIGHTS LAW 8-107-(7))

74. Plaintiff hereby repeats and re-alleges each of the above-mentioned allegations as if fully set forth herein.

75. Plaintiff is a "person" under § 8-102(1) of the New York City Human Rights Law.

76. On information and belief, Banc of America Specialist, Inc. is an "employer" subject to the provisions the New York City Human Rights Law under § 8-102(5) of the Administrative Code.

77. Mr. Scotto is the primary caregiver for his disabled father.

78. Mr. Scotto needed to care for his sick father. When he tried to do that, Defendant discriminated against him by creating a hostile work environment and retaliated against him by demoting him in title and reducing his salary. Defendant also constructively terminated him.

79. By the above course of conduct, Banc of America Specialist, Inc. has violated the New York City Administrative Code §8-107(7).

80. Banc of America Specialist, Inc. has violated the New York City Administrative Code willfully.

81. As a result of Defendant's discrimination, Mr. Scotto has suffered substantial damages, including but not limited to mental distress and lost wages and benefits, in an amount to be determined at trial.

82. Upon information and belief, Defendants' discriminatory actions against Mr. Scotto were taken with reckless indifference to Plaintiff's rights, entitling him to punitive damages under the New York City Human Rights Law.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

83. Prior to filing this action, Plaintiff Mr. Scotto timely filed his written charge under oath asserting disability discrimination with the Equal Employment Opportunity Commission (EEOC) within the appropriate number of days by filling with the State of New York Equal Rights Commission. A copy of said charge is attached hereto and marked Exhibit "A." Said Exhibit "A" is incorporated herein as though herein set forth in full. Said EEOC failed to effect voluntary compliance with the requirements of the ADA on the part of said defendant through conciliation, conference and persuasion. Plaintiff also filed a charge of discrimination with the State of New York Equal Rights Commission in conformity with law.

84. In conformance with law, Plaintiff Mr. Scotto has filed this action subsequent to the expiration of ninety (90) days from the date of receiving his right to sue letter from the EEOC and within two years after defendant willfully violated Plaintiff Mr. Scotto's rights under ADA.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment and issue:

(a) An award to Plaintiff of his actual damages in an amount to be determined at trial for lost wages and benefits, including an award of back pay and front pay;

(b) An award to Plaintiff of compensatory damages in an amount to be determined at trial for the humiliation, mental anguish, pain and suffering and emotional distress sustained by his;

(c) An award of punitive damages to deter future conduct by the Defendant, in an amount to be determined at trial;

(d) An award to Plaintiff of the costs of this action, including reasonable attorney's fees to the fullest extent permitted by law; and

(e) **Such other and further relief as this Court deems necessary and proper.**

## JURY DEMAND

Plaintiff demands a trial by jury as to all issues so triable.

Dated: October 24, 2007

Respectfully submitted,

*/s/ Robert Ottinger*
Robert Ottinger
The Ottinger Firm, P.C.
19 Fulton Street, Suite 400
New York, NY 10038
(212) 571-2000
Attorneys for Plaintiff
Michael Scotto

# EXHIBIT A

EOC Form 161-B (10/96)   U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

To: Michael Scotto
83 Radcliff Road
Staten Island, New York 10305

From: Equal Employment Opportunity Commission
New York District Office
33 Whitehall Street, 5th Floor
New York, New York 10004-2112

[ ]  *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2006-00616 | Enforcement Unit | 212-336-3620 |

(See also the additional information attached to this form.)

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA must be filed in federal or state court **WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

- [X] More than 180 days have passed since the filing of this charge.
- [ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of the charge.
- [X] The EEOC is terminating its processing of this charge.
- [ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

- [X] The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court **WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.
- [ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of your charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Spencer H. Lewis, Jr., District Director

AUG 0 7 2007
*(Date Mailed)*

Enclosure(s)

cc: Respondent(s):
Banc of America
14 Wall Street, 21st Floor
New York, New York 10005
Attn: Director, Human Resources

CP Atty:
Robert W. Ottinger
The Ottinger Firm, P.C.
South Street Seaport
19 Fulton Street, Suite 400
New York, New York 10028